UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 2:13-CR-00037-5-JRG-DHI |
| | ) |
| TAVARES LASHAUN DALTON | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Tavares Lashaun Dalton's Renewed Motion for Compassionate Release [Doc. 810], the United States' Response in Opposition [Doc. 816], and Mr. Dalton's Reply [Doc. 817]. For the reasons herein, the Court will deny Mr. Dalton's motion.

### I.  BACKGROUND

In 2013, the United States indicted Mr. Dalton on multiple counts under the Controlled Substances Act, 21 U.S.C. § 801 *et seq*. Mr. Dalton then entered into a plea agreement with the United States under Federal Rule of Criminal Procedure 11(c)(1)(C). [Plea Agreement, Doc. 291, at 9]. He pleaded guilty to conspiring to distribute or possess with the intent to distribute 280 grams or more of a mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. [*Id.* at 1; Minute Entry, Doc. 323]. In the Rule 11(c)(1)(C) plea agreement, the parties agreed the appropriate term of imprisonment was 240 months. [Plea Agreement at 9].

At sentencing, Mr. Dalton's total offense level and criminal history category were 34 and VI, respectively, and his guidelines range was 262 months to 327 months. [Statement of Reasons at 1 (on file with the Court)]. The Court, however, accepted the parties' Rule 11(c)(1)(C) plea agreement, *see* [*id.* at 3], and sentenced Mr. Dalton to 240 months' imprisonment, [J., Doc. 439,

at 2]. On Mr. Dalton's behalf, the Federal Defender Services of Eastern Tennessee ("FDS") now moves for Mr. Dalton's compassionate release under 18 U.S.C. § 3582(c)(1)(A) because of the COVID-19 pandemic, claiming that Mr. Dalton suffers from underlying medical conditions that put him at a heightened risk of severe illness from COVID-19. [Def.'s Mot. at 4]. Specifically, FDS states that he suffers from lupus, cardiac arrhythmia, and diabetes, though his diabetes has now "resolved to prediabetes." [*Id.* at 1]. The United States opposes Mr. Dalton's motion, arguing that he has been fully vaccinated with the Pfizer-BioNTech vaccine and that § 3553(a)'s factors weigh against his release. [United States' Resp. at 11–12]. Having now reviewed and carefully considered the parties' arguments, the Court is prepared to rule on Mr. Dalton's motion.

## II. ANALYSIS

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that courts can consider motions for compassionate release once a defendant either exhausts her administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden. Section § 3582(c)(1)(A) now states:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all

> administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). In Mr. Dalton's case, the United States "waives enforcement of the exhaustion requirement." [United States' Resp. at 8]; *see United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (determining that § 3582(c)(2)'s exhaustion requirements is a non-jurisdictional claims-processing rule and observing that "waiver" constitutes an exception to mandatory claims-processing rules).

Under § 3582(c)(1)(A), compassionate release is "discretionary, not mandatory," *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) (citation omitted), and the statute contains three substantive requirements that the Court must address in sequential order before it can grant compassionate release, *id.*; *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). First, the Court must determine that "extraordinary and compelling reasons warrant" a sentence reduction. *Ruffin*, 978 F.3d at 1004 (quoting § 3582(c)(1)(A)(i)). Second, the Court must determine that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (quoting § 3582(c)(1)(A)). And third, the Court must consider

3

Case 2:13-cr-00037-JRG   Document 818   Filed 05/12/21   Page 3 of 15   PageID #: 7699

any applicable factors under § 3553(a) "and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010))).

### A. The First Requirement: Extraordinary and Compelling Circumstances

When determining whether an inmate, in requesting compassionate release, has identified reasons that are extraordinary and compelling in nature, "courts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). Section 1B1.13 states:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

USSG § 1B1.13(1)–(3).

Although § 1B1.13 does not define "extraordinary and compelling reasons," the guideline commentary's first application note lists four "circumstances" in which "extraordinary and compelling reasons" are present:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

>   (A) Medical Condition of the Defendant.—
>
>>   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>   (ii) The defendant is—
>
>>   (I) suffering from a serious physical or medical condition,
>>   (II) suffering from a serious functional or cognitive impairment, or
>>   (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>   (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
>   (C) Family Circumstances.—
>
>>   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
>   (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

USSG § 1B1.13 cmt. n.1(A)–(D). In these provisions, "Application Note 1 identifies three specific extraordinary and compelling reasons (tied to the defendant's health, age, or family circumstances) and a fourth catchall," *Ruffin*, 978 F.3d at 1005 (citing *id.*), under which the

Bureau of Prisons' director has license to grant release for "reason[s] other than" the three reasons in Application Note 1(A)–(C), USSG § 1B1.13 cmt. n.1(D).

But the First Step Act "allow[s] defendants," for the first time, "to file reduction-of-sentence motions when the Bureau refuse[s] to do so," *Ruffin*, 978 F.3d at 1004, and district courts, when considering these motions and determining whether extraordinary and compelling circumstances exist for an inmate's release, now have authority to consider "reason[s] other than" the three reasons in Application Note 1(A)–(C), *see Jones*, 980 F.3d at 1111 (stating that "the as-written catch-all provision," which "still refers to the Director of the BOP as the absolute arbiter of 'extraordinary and compelling,'" "contravenes Congress's motivation for reforming compassionate release in the First Step Act and ignores the Sentencing Commission's grounds for augmenting § 1B1.13's application notes"); *compare Ruffin*, 978 F.3d at 1006, 1008 (declining to decide whether, "after the First Step Act, district courts may find additional extraordinary and compelling reasons other than those in [§ 1B1.13's] commentary (such as a once-in-a-century pandemic)," or whether, instead, "Application Note 1's reasons remain exclusive and that the note's catchall delegates to the Bureau of Prisons (not the courts) the task of identifying other reasons"), *with Jones*, 980 F.3d at 1101, 1109, 1111 ("We resolve a debate that we first teed up in *Ruffin*, holding that" district courts, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act," have "full discretion to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (footnote omitted)).

The district courts' authority to eschew Application Note 1(A)–(C) comes from the Sixth Circuit's recent decision in *Jones*, in which the Sixth Circuit observed that the Sentencing Commission has not updated § 1B1.13 in response to the First Step Act and concluded that § 1B1.13, in its current form, therefore cannot serve as an applicable policy statement under

6

§ 3582(c)(1)(A). *Jones*, 980 F.3d at 1101, 1109; *compare* 18 U.S.C. § 3582(c)(1)(A) (stating that district courts must conclude that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission"), *with Jones*, 980 F.3d at 1101, 1109 (holding that § 1B1.13 is "not an 'applicable' policy statement in cases where incarcerated persons file their own motions in district court for compassionate release" because "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018" (citation omitted)).

In deciding *Jones*, however, the Sixth Circuit did not appear altogether to forbid district courts from looking to § 1B1.13—that is, to the "three specific extraordinary and compelling reasons" in Application Note 1(A)–(C), *Ruffin*, 978 F.3d at 1005 (citing USSG § 1B1.13 cmt. n.1(A)–(D))—with an eye toward guidance, rather than with an eye toward deference. *See Jones*, 980 F.3d at 1109, 1111 (stating that § 1B1.13 "does not *wholly* survive the First Step Act's promulgation" and expressing an intention of "preserving as much of § 1B1.13 that can be saved" (emphasis added)); *see also id.* at 1111 (stating that "federal judges *may* skip" an analysis under § 1B1.13 and have "full discretion" to choose whether "to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (emphasis added) (footnote omitted))); *see also United States v. Sherwood*, ___ F.3d ___, 2021 WL 345405, at *1, 2 (6th Cir. Feb. 2, 2021) (stating that § 1B1.13 "no longer provides an *independent* basis for denying compassionate release" and remanding the case because the district court had "relied on § 1B1.13(2) as the *sole* basis for denying [the defendant's] compassionate release," at the exclusion of § 3553(a)'s factors (emphasis added) (citation omitted)); *United States v. Carr*, No. 20-5784, at 3 (6th Cir. Oct. 26, 2020) (PACER) (concluding that "the district court did not err by considering the Sentencing Commission's statement defining 'extraordinary and compelling reasons' when deciding whether [the defendant's] circumstances warranted compassionate

7

release" because the district court merely "treated the policy statement as 'helpful guidance'" (quotation and citation omitted)); *but see United States v. Mullins*, No. 20-5848, at *2–3 (6th Cir. Jan. 8, 2021) (PACER) (vacating this Court's order, which the Court had entered prior to the Sixth Circuit's decision in *Jones*, and remanding the case so that the Court could "recognize its discretion to find extraordinary and compelling reasons other than those listed [in § 1B1.13]").

Even so, the Court will abstain from an analysis under Application Note 1(A)–(C)—outmoded as it is—and exercise its discretion in determining whether Mr. Dalton has identified an extraordinary and compelling reason for his release. Following the Sixth Circuit's decision in *Jones*, some district courts, in deciding whether extraordinary and compelling reasons exist for a defendant's release, have crafted a two-part test: (1) whether the defendant is at high risk of developing serious complications from COVID-19 and (2) whether the facility where the defendant resides is experiencing a severe outbreak of COVID-19.[1] *United States v. Howell*, No. 1:19-cr-242, 2020 WL 6876124, at *1 (N.D. Ohio, Nov. 23, 2020); *see United States v. Black*, No. 17-20656, 2020 WL 7021696, at *3 (E.D. Mich. Nov. 30, 2020) ("Post-*Jones*, these remain appropriate considerations."). The Sixth Circuit has held that district courts do not abuse their discretion when relying on this two-part test. *United States v. Elias*, 984 F.3d 516, 521 & 521 n.1 (6th Cir. 2021). For the purpose of reviewing Mr. Dalton's motion, the Court will adopt this test.

Because Mr. Dalton "has already been fully inoculated with the Pfizer COVID-19 vaccine," [United States' Resp. at 5; *see* Def.'s Med. Records, Doc. 814, at 36 (noting that Mr. Dalton received both doses of the Pfizer vaccine)], the Court simply cannot agree with his

---

[1] FCI Oakdale I, the facility where Mr. Dalton is incarcerated, currently has zero active cases of COVID-19 among its inmates. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated May 11, 2021).

contention that is "at higher risk of severe illness from COVID-19" and that "it is impossible for [him] to . . . protect himself from exposure to this highly-transmissible disease," [Def.'s Mot. at 5]; *see United States v. Jackson*, No. 3:11-cr-00138, 2021 WL 1721427, at *2 (M.D. Tenn. Apr. 30, 2021) ("The Pfizer vaccine is believed to be 95% effective in preventing COVID-19, and '[i]n clinical trial the vaccine was 100% effective in preventing severe disease' from the virus. For that reasons [sic], virtually every district court considering the issue, has determined that being fully vaccinated by the Pfizer shots . . . precludes a finding of an 'extraordinary and compelling' reason within the meaning of Section 3582(c)(1)(A)." (quotation and footnote omitted)); *see also United States v. Roe*, No. 2:14-cr-229, 2021 WL 1711296, at *2 (S.D. Ohio Apr. 30, 2021) ("While Defendant has serious medical conditions that place him in a high-risk category in the absence of a vaccine, Defendant has received both does [sic] of the Pfizer vaccine. . . . [B]ecause Defendant is fully vaccinated and is now at little-to-no risk of severe COVID-19. . . there are no 'extraordinary and compelling reasons' justifying compassionate release." (citations omitted)); *United States v. Miller*, No. 13-20928, 2021 WL 1115863, at *2 (E.D. Mich. Mar. 24, 2021) ("The court is aware of no scientifically derived evidence showing that severe complications or death from COVID-19 is likely, or even possible, after an individual has received a full vaccination regimen. . . . [T]he court does not know of a single confirmed death of a fully vaccinated individual from COVID-19." (citation omitted)); *United States v. Huffaker*, No. 3:16-CR-100, 2020 WL 5995499, at *3 (E.D. Tenn. Oct. 9, 2020) (recognizing that "medically managed serious health conditions, paired with a generalized fear of COVID-19, [fall] short of 'extraordinary and compelling reasons' justifying release" (citing *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020))). Mr. Dalton therefore fails to identify an extraordinary and compelling reason for his release.

9

But even if Mr. Dalton had identified an extraordinary and compelling reason for his release under § 3582(c)(1)(A), he still would not be entitled to release because he has not shown that § 3553(a)'s factors weigh in favor of it. *See Ruffin*, 978 F.3d at 1008 ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary and compelling' reasons would otherwise justify relief." (citations omitted)); *see also Sherwood*, ___ F.3d ___, 2021 WL 345405 at *2 (stating that "[the defendant] must make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today" (citation omitted)).[2]

### B.  The Third Requirement: Applicable Factors under § 3553(a)

The Court considered § 3553(a)'s factors "in some depth at the original sentencing," *United States v. Curry*, 606 F.3d 323, 331 (6th Cir. 2010); *see* [Hr'g Tr., Doc. 567, at 26:14–19, 28:7–25, 29:1–25, 30:1–7], so it has no obligation to readdress all of those factors now, *see* 18 U.S.C. § 3582(c)(1)(A) (requiring district courts to consider § 3553(a)'s factors "to the extent that they are applicable"); *cf. United States v. Jones*, 407 F. App'x 22, 25 (6th Cir. 2011) (stating that in *Curry* "we held that the district court did not abuse its discretion even though it had not expressly considered all of the § 3553(a) factors" because "§ 3582(c)(2) proceedings 'do not constitute a full resentencing of the defendant' and do not require the same procedural formalities as plenary sentencings" (quoting *Curry*, 606 F.3d at 330–31)); *see also Jones*, 980 F.3d at 1114 (stating that "[d]istrict courts should consider all *relevant* § 3553(a) factors before rendering a

---

[2] The Court will exercise its discretion to skip an analysis under § 1B1.13 in favor of an analysis under § 3553(a). *See Jones*, 980 F.3d at 1108, 1111 (holding that § 1B 1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release" and stating that district courts, therefore, "may skip step two of the § 3582(c)(1)(A) inquiry"); *United States v. Lamar*, No. 18-20183, 2020 WL 7319431, at *4 (E.D. Mich. Dec. 10, 2020) ("The government . . . point[s] to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument is a dead letter after the Sixth Circuit's decision in *Jones* . . . . That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. (quoting 18 U.S.C. § 3553(a)(2)(C))).

10

compassionate release decision" (emphasis added) (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007))). "[A]s long as the record *as a whole* demonstrates that the pertinent factors were taken into account," the Court's analysis will be adequate. *Jones*, 980 F.3d at 1114 (quotation omitted).

In Mr. Dalton's case, the relevant factors that the Court will address include § 3553(a)(1), (2), (4), and (6):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . . .
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a)(1)–(2), (4). As for the nature and circumstances of Ms. Dalton's offense, he conspired to distribute or possess with the intent to distribute cocaine base—a serious offense. *See United States v. Dilg*, 726 F. App'x 368, 371 (6th Cir. 2018) ("We have categorically labeled drug offenses as serious." (citing *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000))); *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense[.]" (citations omitted)); *cf. United States v. Suber*, 75 F. App'x 442, 444 (6th Cir. 2003)

11

(describing a conspiracy to distribute heroin as "grave"). In addition, Mr. Dalton admittedly conspired to distribute a large quantity of cocaine base—between 280 and 840 grams. [Plea Agreement at 9]; *see United States v. Farmer*, No. 95-6637, 1996 WL 694147, at *4 (6th Cir. Dec. 3, 1996) (describing 150 grams of cocaine base as "a large quantity of narcotics").

Also, the Court has refamiliarized itself with Mr. Dalton's presentence investigation report and his history and characteristics, and the Court is of the conviction that he would pose a danger to the public if it were to order his release. At sentencing, Mr. Dalton's criminal history category was VI, the highest possible category. His adult criminal history, which is extensive, began at age eighteen, and he amassed thirteen countable points for convictions that include possession of cocaine, simple battery on an officer, willful obstruction of officers, possession with the intent to distribute marijuana, driving under the influence of alcohol, possession of marijuana, possession with the intent to distribute cocaine, impaired driving, possession with the intent to distribute MDMA, possession with the intent to manufacture, sell, or deliver cocaine, and maintaining a vehicle for keeping and selling drugs. [PSR ¶¶ 56, 57, 59, 60, 62–64]. He also received two additional criminal history points under USSG § 4A1.1(d) because he committed the current offense—i.e., a conspiracy to distribute or possess with the intent to distribute cocaine base—while serving a state-court sentence. [*Id.* ¶ 66]. A sentence reduction therefore would not reflect the seriousness of Mr. Dalton's offense and adequately protect the public from future crimes.

Next, the Court shifts its analysis to § 3553(a)(6) and notes that "courts have generally granted compassionate release only to defendants who have served a significant portion of their sentences." *United States v. Kincaid*, No. 3:10-CR-00160-1-TAV-HBG, at 13 (E.D. Tenn. Oct. 29, 2019) (citations omitted) (PACER), *aff'd*, 802 F. App'x 187 (6th Cir. 2020). According to the

12

BOP, Mr. Dalton's release date is April 2030, and the United States points out that, to date, he has served only about forty percent to his sentence. [United States' Resp. at 12]. Because he has has served less than half of his term of imprisonment, his release would result in a substantial reduction in his sentence. *See Kincaid*, 802 F. App'x at 188 ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). A substantial reduction in Mr. Dalton's sentence simply would not reflect the seriousness of his offense, promote respect for the law or afford adequate deterrence, or adequately protect the public from future crimes. 18 U.S.C. § 3553(a)(2).

If the Court were to grant a substantial reduction in his sentence by ordering his release, it would also risk creating "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6); *see Ruffin*, 978 F.3d at 1008 (affirming the district court's denial of an inmate's request for compassionate release when he "ha[d] yet to serve even half of his 25-year sentence"). And also worth noting: though Mr. Dalton's guidelines range was 262 to 327 months, the Court, in accepting the parties' Rule 11(c)(1)(C) plea agreement, imposed a 240-sentence sentence—nearly two years below the bottom of the guidelines range. *Cf. Ruffin*, 978 F.3d at 1008 (affirming the district court's denial of a motion for compassionate release when "the court had already varied downward by five years from [the defendant's] guidelines range when imposing that lengthy sentence").

Before concluding its analysis, the Court must address one more point: Mr. Dalton's post-conviction record, which Mr. Dalton mentions in his motion. [Def.'s Mot. at 9–10]. Mr. Dalton states that he has incurred no post-conviction disciplinary infractions while serving his sentence. He also says that he has used his time to his advantage by completing numerous programs and

13

classes while incarcerated. All of this is to Mr. Dalton's credit, and the Court applauds his efforts and accomplishments—they will serve him well in the future. But good behavior is expected of federal inmates. *See United States v. Martin*, No. 6:06-105-DCR, 2021 WL 134602, at *2 (E.D. Ky. Jan. 13, 2021) ("These admirable efforts will likely serve [the defendant] both now and well after his term of incarceration ends. But good behavior and education, which are expected of incarcerated individuals, do not constitute 'extraordinary and compelling circumstances' that warrant a sentence reduction."); *cf. United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005) (stating that a defendant's re-assimilation into pre-incarceration life is "commendable," but it is "expected of a person on supervised release and do[es] not constitute the 'exceptional behavior' contemplated in the precedents").

A defendant's rehabilitative efforts alone, therefore, are insufficient to justify his release under § 3582(c)(1)(A). *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *Ruffin*, 978 F.3d at 1009 ("Congress has made clear that rehabilitation 'alone' does not provide a proper basis for relief. All told, then, the court reasonably concluded that [the defendant's] rehabilitation efforts, when considered alongside the other § 3553(a) factors, did not warrant any greater reduction of his already below-guidelines sentence. (citing 28 U.S.C. § 994(t))). Because the applicable factors that the Court has analyzed under § 3553(a) work against Mr. Dalton's release, his rehabilitative efforts alone cannot act as a ballast that outweighs those factors. *See Gaston*, 835 F. App'x 852, 855 (6th Cir. 2020) ("[The defendant] points to no evidence other than his rehabilitation that might favor relief. Therefore, *Ruffin* foreclosures remand on this argument."). In sum, Mr. Dalton fails to demonstrate that § 3553(a)'s factors favor his release.

## III. CONCLUSION

The Court sympathizes with Mr. Dalton's concerns, but he is not entitled to compassionate release under § 3582(c)(1)(A) because he has not identified an extraordinary and compelling reason for his release and the relevant factors under § 3553(a) militate against his release. His Renewed Motion for Compassionate Release [Doc. 810] is therefore **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
